# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| NEAPCO COMPONENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:23-cv-12470-LVP-EAS |
| v. | ) |
| | ) Hon. Linda V. Parker |
| AMERICAN AXLE & | ) |
| MANUFACTURING, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT AMERICAN AXLE & MANUFACTURING, INC.'S ANSWER TO FIRST AMENDED COMPLAINT

Defendant American Axle & Manufacturing, Inc. ("AAM" or "Defendant"), by and through undersigned counsel, hereby answers the First Amended Complaint (ECF No. 31, "Complaint") filed by plaintiff Neapco Components, LLC ("Neapco" or "Plaintiff").  AAM hereby responds in numbered paragraphs corresponding to the numbered paragraphs of the Complaint, and in doing so denies the allegations of the Complaint except as specifically stated:

### RESPONSE TO "NATURE OF THE ACTION"

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, and seeks damages and remedies as provided in 35 U.S.C. §§ 281 and 283-285.

**ANSWER TO PARAGRAPH 1**: AAM admits that the Complaint was filed as a civil action alleging patent infringement under the patent laws of the United States, Title 35, United States Code. AAM denies Neapco's allegations of infringement and otherwise denies the allegations in Paragraph 1.

### RESPONSE TO "THE PARTIES"

2. Neapco is a limited liability corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 501 W. Sargent Street, Beatrice, Nebraska 68310. Neapco is a subsidiary of Neapco Holdings, LLC, which has its global headquarters at 38900 Hills Tech Drive, Farmington Hills, Michigan 48331.

**ANSWER TO PARAGRAPH 2**: AAM is without sufficient knowledge or information to form a belief as to the truth of the allegation contained in Paragraph 2 and, therefore, denies each and every allegation of Paragraph 2.

3. AAM is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at One Dauch Drive, Detroit, Michigan 48211.

**ANSWER TO PARAGRAPH 3**: Admitted.

### RESPONSE TO "JURISDICTION AND VENUE"

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

**ANSWER TO PARAGRAPH 4**: Paragraph 4 contains legal conclusions to which no response is necessary. To the extent any response is necessary, AAM admits that the Complaint purports to set forth an action for patent infringement, and that this Court may excersise subject matter jurisdiction over such a complaint under

2

28 U.S.C. §§ 1331 and 1338. AAM denies the remaining allegations of Paragraph 4, including any allegation that any activity by AAM is actionable for patent infringement.

     5.    Jurisdiction and venue for this action are proper in the Eastern District of Michigan. This Court has personal jurisdiction over Defendant, *inter alia*, because it is headquartered in this Judicial District, has over a dozen separate offices in this Judicial District, and is doing substantial business in this Judicial District, both generally and, on information and belief, with respect to the allegations in this complaint, including Defendant's one or more acts of infringement in this Judicial District.

**ANSWER TO PARAGRAPH 5**: Paragraph 5 contains legal conclusions to which no response is necessary. To the extent any response is necessary, AAM denies that jurisdiction and venue for this action are proper in the Eastern District of Michigan. However, solely to conserve the resources of the Court and the parties, AAM will not object on the basis of lack of personal jurisdiction or improper venue. AAM denies the remaining allegations of Paragraph 5.

     6.    Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).

**ANSWER TO PARAGRAPH 6**: Paragraph 6 contains legal conclusions to which no response is necessary. To the extent any response is necessary, AAM denies that venue for this action is proper in the Eastern District of Michigan. However, solely to conserve the resources of the Court and the parties, AAM will not object on the basis of improper venue. AAM denies the remaining allegations of Paragraph 6.

## RESPONSE TO "THE PATENTS-IN-SUIT"

7.      Neapco is the assignee and lawful owner of all right, title, and interest in United States Patent No. 11,434,958 titled "High Retention Force Serviceable Plug-On Joint Assembly" ("the '958 patent"). A copy of the '958 patent is attached hereto as **Exhibit A**, which was duly and legally issued on September 6, 2022, naming Michael Walter Hopson, Arvind Srinivasan, and Michael Peter Kinsella as the inventors.

**ANSWER TO PARAGRAPH 7**: AAM admits that Exhibit A appears to be a copy of the '958 patent, which appears to be titled, "High Retention Force Serviceable Plug-on Joint Assembly," and names on its face Michael Walter Hopson, Arvind Srinivasan, and Michael Peter Kinsella as the inventors. AAM is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 7 and, therefore, denies each and every allegation.

8.      Neapco is the assignee and lawful owner of all right, title, and interest in United States Patent No. 11,598,376 titled "High Retention Force Serviceable Plug-On Joint Assembly" ("the '376 patent"). A copy of the '376 patent is attached hereto as **Exhibit B**, which was duly and legally issued on March 7, 2023, naming Michael Walter Hopson, Arvind Srinivasan, and Michael Peter Kinsella as the inventors.

**ANSWER TO PARAGRAPH 8**: AAM admits that Exhibit B appears to be a copy of the '376 patent, which appears to be titled, "High Retention Force Serviceable Plug-on Joint Assembly," and names on its face Michael Walter Hopson, Arvind Srinivasan, and Michael Peter Kinsella as the inventors.  AAM is without sufficient knowledge or information to form a belief as to the truth of the

remaining allegations contained in Paragraph 8 and, therefore, denies each and every allegation.

## RESPONSE TO "BACKGROUND"

9. For over 100 years, Neapco has been at the forefront of the global automotive industry—designing, developing, and manufacturing high-quality, innovative OEM and aftermarket products for automotive, light truck, heavy truck, off-road, off-highway, agriculture and industrial applications.

**ANSWER TO PARAGRAPH 9**: AAM is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 9 and, therefore, denies each and every allegation.

10. Headquartered in the heart of the American auto industry, Neapco invests heavily in precision engineering and protection of its innovative processes, production capabilities, and products. Neapco has been awarded hundreds of patents, including its first issued patent filed in 1946. Neapco's investment in domestic and international patent protection has propelled it to be an industry leader for its cutting-edge driveline products, including halfshafts and propshafts.

**ANSWER TO PARAGRAPH 10**: AAM is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 10 and, therefore, denies each and every allegation.

11. AAM is a direct competitor of Neapco's, offering various automotive products including propshafts for use in light and heavy duty trucks and passenger cars.

**ANSWER TO PARAGRAPH 11**: AAM admits that it offers automotive products including propshafts for use in light and heavy duty trucks and passenger cars. AAM is without sufficient knowledge or information to form a belief as to the

truth of the remaining allegations contained in Paragraph 11 and, therefore, denies each and every allegation.

12. AAM and Neapco have been adverse to each other in several legal disputes related to patent infringement. *See American Axle & Manufacturing, Inc. v. Neapco Holdings LLC,* No. 1:15-cv-01168 (D. Del Dec. 18, 2015); *Neapco Drivelines LLC v. American Axle & Manufacturing, Inc.,* No. 2:17-cv-13287 (E.D. Mich. Oct. 6, 2017).

**ANSWER TO PARAGRAPH 12**: AAM admits that AAM and Neapco were adverse to each other in patent litigations captioned *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, No. 1:15-cv-01168 (D. Del Dec. 18, 2015) and *Neapco Drivelines LLC v. American Axle & Manufacturing, Inc.*, No. 2:17-cv-13287 (E.D. Mich. Oct. 6, 2017). AAM denies the remaining allegations of Paragraph 12.

13. In 2017, Neapco submitted a bid to Fiat Chrysler Automobiles N.V. ("FCA") for Neapco to supply its new and innovative propshafts that are covered by the '958 patent and the '376 patent to FCA's Dodge Ram 2500, 3500, 4500, and 5500 Heavy Duty vehicles ("Ram HD Vehicles").

**ANSWER TO PARAGRAPH 13**: AAM is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, denies each and every allegation.

14. As part of that bid, Neapco submitted a confidential design proposal to FCA that described in detail many innovative aspects of Neapco's propshafts that are disclosed in and covered by the '958 patent and the '376 patent. Neapco disclosed to FCA that it was seeking patent protection to cover the design it presented to FCA.

**ANSWER TO PARAGRAPH 14**: AAM is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, denies each and every allegation.

15. FCA did not award the bid to Neapco, but rather awarded it to AAM to supply the propshafts for the Ram HD Vehicles.

**ANSWER TO PARAGRAPH 15**: AAM admits that FCA awarded AAM a bid to supply propshafts for Ram HD Vehicles. AAM is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 15 and, therefore, denies each and every allegation.

16. Having secured a supplier relationship with FCA to the direct detriment of Neapco, AAM now manufactures, uses, sells, and/or offers for sale propshafts with plug-on interface assemblies including, for example, propshafts for at least the 2023 Dodge Ram HD Vehicles ("Ram HD Propshafts"). At least certain of these propshafts bear the product no. 68312648AC.

**ANSWER TO PARAGRAPH 16**: AAM admits that it supplies propshafts to FCA for Ram HD Vehicles. AAM is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 16 and, therefore, denies each and every allegation.

17. Upon information and belief, and based on Neapco's experience as a Tier 1 supplier to OEMs in the automotive industry, to the extent the FCA had knowledge of Neapco's intent to obtain patent coverage on the design that it presented to FCA, FCA would likely have conveyed that to AAM.

**ANSWER TO PARAGRAPH 17**: AAM is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 17 and, therefore, denies each and every allegation.

18. These propshafts utilize the very same innovations embodied in Neapco's proposal to FCA, and which are disclosed and claimed in Neapco's '958 and '376 patents.

**ANSWER TO PARAGRAPH 18**: AAM denies that its propshafts are disclosed and claimed in the '958 and '376 patents. AAM is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 18 and, therefore, denies each and every allegation.

## RESPONSE TO "COUNT I – INFRINGEMENT OF U.S. PATENT NO. 11,434,958"

19. Neapco reincorporates and re-alleges the allegations of the above paragraphs as if fully set forth herein.

**ANSWER TO PARAGRAPH 19**: AAM repeats and re-alleges the responses set forth in the preceding paragraphs above as though set forth in length herein.

20. AAM has and continues to manufacture, use, offer for sale, and/or sell driveline products, including at least the Ram HD Propshafts and other propshafts having a similar plug-on interface assembly, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '958 patent in violation of 35 U.S.C. § 271(a), including claim 1 as set forth in the exemplary claim chart at **Exhibit C**. Upon information and belief, AAM at least assembles and tests complete infringing driveline assemblies including components that may be provided by third-parties.

**ANSWER TO PARAGRAPH 20**: Denied.

21. Additionally or alternatively, AAM has and continues to actively induce infringement of one or more claims of the '958 patent in violation of 35 U.S.C. § 271(b) by actively and knowingly aiding and abetting in at least FCA's direct infringement of one or more claims of the '958 patent.

**ANSWER TO PARAGRAPH 21**: Denied.

22. Given the direct competitor relationship between AAM and Neapco, as well as the history of patent disputes between the two parties, upon information and belief, AAM had knowledge of the '958 patent on or shortly after its issuance date of September 6, 2022.

**ANSWER TO PARAGRAPH 22**: Denied.

23. At the very least, AAM had actual knowledge of the '958 patent as of September 29, 2023, the date Neapco filed its Original Complaint (ECF No. 1) in this case, and no later than November 17, 2023, the date of service of the Original Complaint on AAM.

**ANSWER TO PARAGRAPH 23**: AAM admits that it had actual knowledge of the '958 patent as of November 17, 2023, the date of service of the Original Complaint on AAM. AAM denies the remaining allegations of Paragraph 23.

24. Despite having knowledge of the '958 patent, AAM has and continues to take affirmative steps to induce direct infringement by FCA during the normal course of its business of carrying out development as a driveline supplier to FCA, knowing that such affirmative acts would result in FCA's direct infringement of one or more claims of the '958 patent, and FCA's direct infringement actually did and continues to occur.

**ANSWER TO PARAGRAPH 24**: Denied.

25. On information and belief, including Neapco's understanding of the OEM-supplier relationship, AAM would have participated in several technical reviews and engineering meetings with FCA where AAM directed FCA to design certain elements of the Ram HD Propshaft and/or interrelated components for compatibility, such as the spline interface between the first member and the second member and the seal attachment interface that covers the window formed within the

first member. The process of designing such an interface would require coordination between AAM and FCA, including AAM actively encouraging FCA regarding the design and manufacture of the Ram HD Propshafts, to arrive at a compatible interface with a proper fit, including, for example, to ensure sealing against the elements in the vehicle underbody environment to avoid internal corrosion or spline seizing and to ensure proper assembly. Additionally, AAM would have instructed FCA regarding the optimal geometry of the seal to cover the window formed within the first member and participated in propshaft-to-transfer-case build trials to assess spline and boot seal fit characteristics and assembly qualities and to guide FCA in that process. AAM would know that FCA manufacturing the Ram HD Vehicles that include the Ram HD Propshafts and using, offering for sale, and/or selling the Ram HD Vehicles would result in FCA's infringement of one or more claims of the '958 patent.

**ANSWER TO PARAGRAPH 25**: Denied.

26.     Further, on information and belief, as part of its obligations as a supplier to FCA, AAM continues to provide technical, service, and engineering support to FCA and actively encourages FCA to perform activities at AAM's direction related to at least servicing, warranty, and maintenance of the Ram HD Propshaft. This support includes instruction and guidance to FCA to maintain and service the Ram HD Propshaft in an infringing manner, and AAM knows that such support will result in the infringement of the '958 patent. That is, having knowledge of the '958 patent at least provided by the Original Complaint (ECF No. 1), AAM knows that FCA performing such activities at the guidance, instruction, and direction of AAM results in FCA's infringement of one or more claims of the '958 patent and FCA's infringement actually continues to occur.

**ANSWER TO PARAGRAPH 26**: Denied.

27.     Additionally or alternatively, AAM has and continues to manufacture, use, offer for sale, and/or sell driveline products, including at least the Ram HD Propshafts and other propshafts having a similar plug-on interface assembly, that constitute a material part of one or more claims of the '958 patent as demonstrated by the exemplary claim chart at Exhibit C, while knowing the same to be especially adapted or made for use in an infringement of one or more claims of the '958 patent in violation of 35 U.S.C. § 271(c), and direct infringement by FCA of one or more claims of the '958 patent actually occurred.

**ANSWER TO PARAGRAPH 27**: Denied.

10

28. The Ram HD Propshafts are not a staple article or commodity of commerce suitable for substantial noninfringing uses as they are specifically designed to fit within the Ram HD Vehicles to function as propshafts. As acknowledged by this Court, "[p]ropeller driveshafts, known as propshafts, are used to mechanically connect the back wheels of cars to the engine on the front of the cars." Opinion and Order Granting Defendant's Motion to Dismiss in Part (ECF No. 23) at 2 (quoting Babak Akhlaghi & Stephen Becker, Patent Applications Handbook § 4:12 (2024 ed.); *see also Am. Axle & Mfg. Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1289 (Fed. Cir. 2020) (internal citation and alteration omitted) ("Propshafts are employed in automotive vehicles to transmit rotary power in a driveline."). They do not have any purpose outside of that context. Moreover, the specific propshafts provided by AAM to FCA are designed to be used and serviced only in an infringing manner in the FCA vehicles. Upon information and belief, these propshafts are designed specifically for the FCA application and not used in any other applications.

**ANSWER TO PARAGRAPH 28**: Denied.

29. The Ram HD Propshafts have a very specific construction and configuration to enable them to perform their sole function of transmitting rotary power in the driveline systems of the Ram HD Vehicles. Moreover, the propshafts are designed to work only in the context of the full assembly as used by FCA, including for example, with the use of the seal as shown in the claim charts. These propshafts are not used, or intended to be used, in any other configuration that differs in a material way from that shown in the claim charts. Thus, there are no non-infringing uses for the Ram HD Propshafts.

**ANSWER TO PARAGRAPH 29**: Denied.

30. AAM's infringement has damaged and continues to damage and injure Neapco. Neapco's injury is irreparable and will continue unless and until AAM is enjoined by this Court from further infringement.

**ANSWER TO PARAGRAPH 30**: Denied.

### RESPONSE TO
### "COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,598,376"

31. Neapco reincorporates and re-alleges the allegations of the above paragraphs as if fully set forth herein.

**ANSWER TO PARAGRAPH 31**: AAM repeats and re-alleges the responses set forth in the preceding paragraphs above as though set forth in length herein.

32. AAM has and continues to manufacture, use, offer for sale, and/or sell driveline products, including at least the Ram HD Propshafts and other propshafts having a similar plug-on interface assembly, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '376 patent in violation of 35 U.S.C. § 271(a), including claim 1, as set forth in the exemplary claim chart at **Exhibit D**.

**ANSWER TO PARAGRAPH 32**: Denied.

33. Additionally or alternatively, AAM has and continues to actively induce infringement of one or more claims of the '376 patent in violation of 35 U.S.C. § 271(b) by actively and knowingly aiding and abetting in at least FCA's direct infringement of one or more claims of the '376 patent.

**ANSWER TO PARAGRAPH 33**: Denied.

34. Given the direct competitor relationship between AAM and Neapco, as well as the history of patent disputes between the two parties, upon information and belief, AAM had knowledge of the '376 patent on or shortly after its issuance date of March 7, 2023.

**ANSWER TO PARAGRAPH 34**: Denied.

35. At the very least, AAM had actual knowledge of the '376 patent as of September 29, 2023, the date Neapco filed its Original Complaint (ECF No. 1) in this case, and no later than November 17, 2023, the date of service of the Original Complaint on AAM.

**ANSWER TO PARAGRAPH 35**: AAM admits that it had actual knowledge of the '376 patent as of November 17, 2023, the date of service of the Original Complaint on AAM. AAM denies the remaining allegations of Paragraph 35.

36. Despite having knowledge of the '376 patent, AAM has and continues to take affirmative steps to induce direct infringement by FCA during the normal

course of its business of carrying out development as a driveline supplier to FCA, knowing that such affirmative acts would result in FCA's direct infringement of one or more claims of the '376 patent, and FCA's direct infringement actually did and continues to occur.

**ANSWER TO PARAGRAPH 36**: Denied.

37. On information and belief, including Neapco's understanding of the OEM-supplier relationship, AAM would have participated in several technical reviews and engineering meetings with FCA where AAM directed FCA to design certain elements of the Ram HD Propshaft and/or interrelated components for compatibility, such as the spline interface between the first member and the second member and the seal attachment interface that covers the window formed within the first member. The process of designing such an interface would require coordination between AAM and FCA, including AAM actively encouraging FCA regarding the design and manufacture of the Ram HD Propshafts, to arrive at a compatible interface with a proper fit, including, for example, to ensure sealing against the elements in the vehicle underbody environment to avoid internal corrosion or spline seizing and to ensure proper assembly. Additionally, AAM would have instructed FCA regarding the optimal geometry of the seal to cover the window formed within the first member and participated in propshaft-to-transfer-case build trials to assess spline and boot seal fit characteristics and assembly qualities and to guide FCA in that process. AAM would know that FCA manufacturing the Ram HD Vehicles that include the Ram HD Propshafts and using, offering for sale, and/or selling the Ram HD Vehicles would result in FCA's infringement of one or more claims of the '376 patent.

**ANSWER TO PARAGRAPH 37**: Denied.

38. Further, on information and belief, as part of its obligations as a supplier to FCA, AAM continues to provide technical, service, and engineering support to FCA and actively encourages FCA to perform activities at AAM's direction related to at least servicing, warranty, and maintenance of the Ram HD Propshaft. This support includes instruction and guidance to FCA to maintain and service the RAM HD Propshaft in an infringing manner, and AAM knows that such support will result in the infringement of the '376 patent. That is, having knowledge of the '376 patent at least provided by the Original Complaint (ECF No. 1), AAM knows that FCA performing such activities at the guidance, instruction, and direction of AAM results in FCA's infringement of one or more claims of the '376 patent and FCA's infringement actually continues to occur.

**ANSWER TO PARAGRAPH 38**: Denied.

39. Additionally or alternatively, AAM has and continues to manufacture, use, offer for sale, and/or sell driveline products, including at least the Ram HD Propshafts and other propshafts having a similar plug-on interface assembly, that constitute a material part of one or more claims of the '376 patent as demonstrated by the exemplary claim chart at Exhibit D, while knowing the same to be especially adapted or made for utilization in an infringement of one or more claims of the '376 patent in violation of 35 U.S.C. § 271(c), and direct infringement by FCA of one or more claims of the '376 patent actually occurred.

**ANSWER TO PARAGRAPH 39**: Denied.

40. The Ram HD Propshafts are not a staple article or commodity of commerce suitable for substantial noninfringing uses as they are specifically designed to fit within the Ram HD Vehicles to function as propshafts. As acknowledged by this Court, "[p]ropeller driveshafts, known as propshafts, are used to mechanically connect the back wheels of cars to the engine on the front of the cars." Opinion and Order Granting Defendant's Motion to Dismiss in Part (ECF No. 23) at 2 (quoting Babak Akhlaghi & Stephen Becker, Patent Applications Handbook § 4:12 (2024 ed.); *see also Am. Axle & Mfg. Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1289 (Fed. Cir. 2020) (internal citation and alteration omitted) ("Propshafts are employed in automotive vehicles to transmit rotary power in a driveline."). They do not have any purpose outside of that context. Moreover, the specific propshafts provided by AAM to FCA are designed to be used and serviced only in an infringing manner in the FCA vehicles. Upon information and belief, these propshafts are designed specifically for the FCA application and not used in any other applications.

**ANSWER TO PARAGRAPH 40**: Denied.

41. The Ram HD Propshafts have a very specific construction and configuration to enable them to perform their sole function of transmitting rotary power in the driveline systems of the Ram HD Vehicles. Moreover, the propshafts are designed to work only in the context of the full assembly as used by FCA, including for example, with the use of the seal as shown in the claim charts. These propshafts are not used, or intended to be used, in any other configuration that differs in a material way from that shown in the claim charts. Thus, there are no non-infringing uses for the Ram HD Propshafts.

**ANSWER TO PARAGRAPH 41**: Denied.

42. AAM's infringement has damaged and continues to damage and injure Neapco. Neapco's injury is irreparable and will continue unless and until AAM is enjoined by this Court from further infringement.

**ANSWER TO PARAGRAPH 42**: Denied.

### RESPONSE TO "JURY DEMAND"

The Complaint states that Neapco demands a jury trial on all issues so triable.

### RESPONSE TO "PRAYER FOR RELIEF"

AAM denies that Neapco is entitled to either the requested relief in the Complaint's "Prayer for Relief" or any other relief.

### DEFENSES

AAM asserts the following affirmative defenses without undertaking or otherwise shifting any applicable burden of proof. AAM reserves the right to amend its Answer to assert additional defenses and conform its pleadings to the evidence as additional information becomes available and as warranted by facts revealed through investigation and discovery.

### FIRST DEFENSE – NON-INFRINGEMENT

AAM does not infringe and has not infringed, either directly or indirectly, any claim of the '958 and '376 patents under any theory, including literal infringement or infringement under the doctrine of equivalents.

### SECOND DEFENSE – INVALIDITY AND INELIGIBILITY

Each and every claim of the '958 and '376 patents is invalid and/or ineligible for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103,

and 112, or other judicially-created bases for invalidation, including for the following reasons set forth by AAM in its petitions for *inter partes* review in IPR2025-00090 and IPR2025-00091: anticipation under 35 U.S.C. § 102 by the 2016 Jeep® Renegade service information manual and obviousness under 35 U.S.C. § 103 over the 2016 Jeep® Renegade service information manual in view of U.S. Patent No. 6,739,422, U.S. Publication No. 2018/0003240, and the knowledge of a person of ordinary skill in the art.

### THIRD DEFENSE – INCORRECT INVENTORSHIP

Each and every claim of the '958 and '376 patents is invalid for naming more or less than the true inventors.

### FOURTH DEFENSE – FAILURE TO STATE A CLAIM

Neapco's Complaint fails to state a claim against AAM upon which relief can be granted.

### FIFTH DEFENSE – FAILURE TO MARK

To the extent Neapco has failed to comply with the notice requirements of 35 U.S.C. § 287, Neapco is barred from all monetary relief for acts that occurred prior to Neapco providing actual notice to AAM.

### SIXTH DEFENSE – LIMITATION OF DAMAGES

Pursuant to 35 U.S.C. § 286, Neapco is barred from recovering any damages for acts that occurred more than six years before it filed the Complaint in this action.

### SEVENTH DEFENSE – PROSECUTION HISTORY ESTOPPEL, DISCLAIMER, AND ENSNAREMENT

By virtue of statements, amendments made, and/or positions taken during prosecution of the application for the Asserted Patents and/or related patents or patent applications, whether explicit or implicit, Neapco is barred from claiming that the '958 and '376 patents cover or include, either literally or by application of the doctrine of equivalents, any of AAM's methods, products, systems, services, or processes. To the extent that Neapco's alleged cause of action for infringement of any of the '958 and '376 patents is based on the doctrine of equivalents, Neapco is barred under the doctrine of prosecution history estoppel, ensnarement, and/or other limits to allegations of infringement.

### EIGHTH DEFENSE – LICENSE, EXHAUSTION, WAIVER, AND ESTOPPEL

Neapco's claims are barred, in whole or in part, by license, exhaustion, and/or the doctrines of waiver and/or equitable estoppel.

### NINTH DEFENSE – UNCLEAN HANDS

Neapco's claims are barred, in whole or in part, by the doctrine of unclean hands.

### TENTH DEFENSE – NO EXCEPTIONAL CASE

Neapco cannot prove that this is an exceptional case justifying an award of attorney fees against AAM pursuant to 35 U.S.C. § 285.

## ELEVENTH DEFENSE – INJUNCTIVE RELIEF INAPPROPRIATE

Neapco's prayer for injunctive relief is barred in light of the availability of an adequate remedy at law, to the extent any remedy is justified. Neapco will not suffer any irreparable harm or injury if no permanent injunction is issued.

## RESERVATION OF ALL AFFIRMATIVE DEFENSES

AAM reserves the right to offer any other and additional defense that is now or may become available or appear during, or as a result of, discovery proceedings in this action.

## PRAYER FOR RELIEF

AAM respectively requests that this Court enter judgment in its favor against Neapco, and grant the following relief:

A. That U.S. Patent No. 11,434,958 be judged invalid, not enforceable, and not infringed by AAM;

B. That U.S. Patent No. 11,598,376 be judged invalid, not enforceable, and not infringed by AAM;

C. That it be judged that Neapco is entitled to no damages, interest, or costs;

D. That the Court declare this an exceptional case and award American Axle its attorneys' fees, as provided by 35 U.S.C. § 285; and

E. That American Axle be awarded such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

AAM requests a jury trial for those issues so triable herein.

DATED: March 14, 2025	Respectfully Submitted,

/s/ *James R. Nuttall*
Lisa A. Brown (P67208)
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
(313) 568-6800
lbrown@dykema.com

Steven M. Zeller (IL Bar No. 6238416)
**DYKEMA GOSSETT PLLC**
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 627-2272
szeller@dykema.com

James R. Nuttall (IL Bar No. 6243585)
Robert F. Kappers (IL Bar No. 6313187)
Candice J. Kwark (IL Bar No. 6332282)
Jacob T. Michalakes (IL Bar No. 6336389)
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Email: jnuttall@steptoe.com
Email: rkappers@steptoe.com
Email: ckwark@steptoe.com
Email: jmichalakes@steptoe.com

*Attorneys for Defendant*
*American Axle & Manufacturing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

*/s/ James R. Nuttall*
James R. Nuttall